UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-848(DSD/JMM)

Edward Hines,

Plaintiff,

v. **ORDER**

Metro Work Center Inc.,

Defendant

Michael Mobley, Esq., Mobley Law Office,701 Fourth Avenue South, Suite 500 Minneapolis, MN 55415, counsel for plaintiff.

Timothy Pawlenty, Esq., Karen A. Janisch, Esq., Peter Gray, Esq., and Rider, Bennett, Egan & Arundel, 333 South Seventh Street, Suite 200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants defendant's motion.

**BACKGROUND**

Plaintiff Edward Hines ("Hines") filed this employment discrimination case against his former employer, Metro Work Center, Inc. ("Metro"), alleging that he was fired because of his race. Hines was hired as a direct care provider by Metro, a licensed facility that provides day training and habilitation services for adults with disabilities. Hines was hired in August 1995 as a

FILED 6-27-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. 6-27-01
Deputy Clerk's Initials

part-time employee. In January 1996, Hines was hired for a full-time direct care staff position.

As a direct care staff employee, Hines was responsible for supervising clients, ensuring safe conditions for clients, developing and implementing community integration plans for clients, ensuring activities were age and functionally appropriate, implementing each client's individual service plan's ("ISP") objectives and collecting and recording client status in regard to the ISP objectives, accurately recording the client's hourly attendance, communicating with site coordinators, supervisors, and the clients' families as needed, following written behavior plans for clients, making vulnerable adult reports as needed, recording and submitting information about client work completion for payment, and other responsibilities as assigned. (Krogstad Aff. Ex. 1.)

Hines received performance evaluations in March 1996, July 1996, January 1997 and January 1998. (Id. Exs. 2, 3, 4 and 5.) Each of these evaluations was completed by a site coordinator or Dianna Krogstad ("Krogstad"), the executive director of Metro, along with a self evaluation by Hines. (Id.) Metro would then meet with Hines to discuss the evaluation, and then Hines signed each evaluation. (Janisch Aff. Ex. 1; Hines Dep. 102-9.) The evaluations show that Hines's performance declined from having five areas that needed improvement in March 1996 to having fourteen

areas that needed improvement in January 1998. (Krogstad Aff. Exs. 2, 3, 4 and 5.) Many of Hines's noted deficiencies remained the same and even his own self evaluation acknowledged five areas where he continued to need improvement. (Id.)

In January 1998, Krogstad prepared a corrective action plan outlining specific performance problems and setting specific expectations for Hines's performance. (Krogstad Aff. ¶ 14.) In early February 1998, Hines met with Krogstad and a site coordinator, Mark Davis, to review his performance evaluation and the corrective action plan specifying Metro's expectations for Hines's continued employment. (Id. ¶ 14; Janisch Aff. Ex.1, Hines Dep. 185.) The correction plan expressly informed Hines about the seriousness of his performance deficiencies and that suspension or termination were possibilities if Hines did not make significant progress. (Krogstad Aff. Ex. 6.)

Hines did not perform as required by the corrective action plan. (Id. ¶ 16.) In three of the five areas outlined under the plan, Hines did not show any sustained progress. (Id. Ex. 7.) Based on her review of Hines's performance under the plan, Krogstad concluded Hines was not fulfilling his job requirements. (Id. ¶ 16, Ex. 7.)

On March 24, 1998, Hines requested a leave of absence until April 20, 1998. (Id. Ex. 13.) Hines's doctor provided a disability certificate dated March 23, 1998, that identified

Hines's medical need for leave and a return to work date of April 20, 1998. (Id. Ex.14.)[1] On April 16, 1998, Lois Bjelke from Metro contacted Hines and confirmed that he had received the March 31, 1998, letter. (Id.)

In a letter dated March 31, 1998, Krogstad informed Hines that his leave from March 24, 1998, until April 20, 1998, was approved. (Id. Ex. 15.) This letter also informed Hines that Metro was reviewing his performance under the corrective action plan and was investigating an issue related to his administrating medication to

---

[1] Metro has a written policy that governs leaves of absence for employees. (Krogstad Aff. ¶ 21.) Employees are required to provide notice of the need for leave as far in advance as possible. (Id. Ex. 11.) All leaves must be approved by Krogstad. (Id.) If leave is based upon a medical reason or disability, the employee must provide Metro with a doctor's certificate of the medical need and identifying the expected duration of the leave. (Id.). The employee must report to work on the first day following the end of the approved leave. (Id.) If the employee is unable to return, the employee must request an extension two weeks before the leave is expected to expire. (Id.) Approval for an extension of leave is based upon the same process as the initial request. (Id.) Thus, if an extension of a leave is based upon medical need, medical certification of the need for the extension is required. (Id. ¶ 23.) "Failure to return after the leave or leave extension ends is considered a voluntary termination." (Id. Ex. 11.)

a client.[2] (Id.) Hines was notified that if either of those reviews resulted in the finding of a serious breach of his work assignment, his employment might be terminated. (Id.)

Hines failed to report to work for the entire week of April 20, 1998, and did not contact Metro about his continued absence. (Id. ¶ 28.) On April 27, 1998, Krogstad wrote Hines about his failure to return to work. (Id. Ex. 17.) In this letter, Krogstad reminded Hines of Metro's policy relating to the failure to return to work following an approved leave and informed him that, because he had not requested an extension to his leave, Metro was assuming he was voluntarily terminating his employment. (Id.) Hines did not respond to this letter, contact Krogstad, or otherwise provide any further medical certification for or otherwise request an extension of his leave. (Id. ¶ 30.) Hines alleges that he was fired because of his race. Metro moves for summary judgment on Hines's claim. For the reasons stated, defendant's motion is granted.

**DISCUSSION**

**A. Standard of Review**

Summary judgment is appropriate where there is no genuine

---

[2] While defendant goes to great length to discuss Hines's alleged inappropriate handling of certain psychotropic drugs, the court does not consider this to be particularly relevant to its determination other than to demonstrate Hines's continuing failure to meet his employer's performance expectations.

issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, the court views the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences without assessing credibility. See Miller v. Nat'l Cas. Co., 61 F.3d 627, 628 (8th Cir. 1995). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23. With this standard at hand, the court considers Metro's motion for summary judgment.

**B. Plaintiff Fails To Present A Prima Facie Case**

Hines's racial discrimination claim is analyzed under the framework of McDonnell Douglas v. Green, 411 U.S. 792 (1973). A plaintiff must first present a prima facie case of racial discrimination: that he was a member of a protected class, that he was qualified for the position, and that despite his qualification he was displaced from the position. See Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1108 (8th Cir. 1998); see also Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996). If he meets his prima facie burden, a rebuttable presumption of discrimination arises. See Rose-Matson, 133 F.3d at 1107. However, the defendant may rebut plaintiff's prima facie case by demonstrating a legitimate, nondiscriminatory reason for adverse action against plaintiff. See id. Once the defendant articulates such a reason, the presumption of discrimination disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. See id.; see also Rothmeier, 85 F.3d at 1336-37. ("the rule in [the Eighth] Circuit is that an [employment] discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [protected status] was a determinative factor in the adverse employment decision." ).

In this case, Hines fails to establish a prima facie case on several bases: first, Hines does not establish that he was meeting his employer's legitimate performance expectations; second, he fails to establish that his voluntary termination under the leave policy was a constructive discharge; and finally, Hines fails to establish that the application of the leave policy was applied differently to him than it was to similarly situated non-minority employees. The court will address each in turn.

Hines's claim first fails at the prima facie stage because Hines has not established that he was qualified for the position of direct care provider. Qualified for the purposes of a prima facie case requires that the employee must demonstrate that he was actually performing his job at a level that met the employer's legitimate expectations. See Whitley v. Peer Sys. Inc., 221 F.3d 1053, 1055 (citing Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 346) (8th Cir. 2000). Hines's performance evaluations show a history of poor performance and that he was not meeting Metro's legitimate expectations. Hines's evaluations show that, over the course of his employment, the number of categories where Hines needed to show improvement increased. (See Krogstad Aff. Exs. 2, 3, 4 and 5.) The corrective action plan was an attempt to bring Hines's performance up to a level that would fulfill expectations, but the evidence shows that Hines continued to have problems consistently or accurately completing client charting, implementing

new activities for clients, and following expected procedures for accounting for a client's PRN medication. (See id. Ex. 7.)

Hines attempts to rebut this record by stating that he was employed by others in a similar field and was not disciplined by those employers. The only evidence for this rebuttal is Hines's own self-serving testimony. No evidence to show that these other jobs were similar to the position at Metro was produced. Nor is there any evidence that Hines's other employers used standards similar to those at Metro. On the record before the court, no reasonable jury would conclude that Hines was qualified to work as a direct care provider. See Richmond v. Bd. of Regents, 957 F.2d 595, 598 (8th Cir. 1992)(affirming trial court's conclusion that plaintiff had not met her prima facie burden where defendants produced abundant documentation, covering approximately eighteen months, that plaintiff's performance was unsatisfactory, that plaintiff ignored progressive warnings and discipline, and that plaintiff's performance did not improve).

Hines also has not established that his separation from employment was a result of defendant's actions rather than his own voluntary choice not to return to work. Under Metro's leave policy, his failure to return to work at the end of his approved leave constitutes a voluntary separation from employment. Hines had notice of this policy and received a letter from Krogstad in late April informing him that a failure to return to work would be

treated as a voluntary separation. Hines took no action to return and did not inform his employer that he intended to return. Hines's failure to act or return to work must be viewed as a voluntary separation on his part, not a discriminatory constructive discharge. See Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000) (holding that there was no constructive discharge where employee was terminated after failing to return to work at the end of a leave of absence).

Finally, Hines fails to present any evidence that he was treated differently than any similarly situated non-minority employees. Hines particularly fails to present any evidence that Metro applied its leave policy, requiring employee's to return to work at the end of a leave, differently to non-minority employees. In other words, there is no evidence that plaintiff's race had anything to do with the way Metro applied its written leave policy. See Runyon, 218 F.3d at 918; Schoffstall v. Henderson, 223 F.3d 818, 826 (8th Cir. 2000). Based upon the foregoing, the court concludes that plaintiff has failed to establish a prima facie case of discrimination.

**C. Plaintiff Fails To Establish Pretext**

Moreover, even if Hines could establish a prima facie case, he has failed to present sufficient evidence to support a reasonable inference of discriminatory animus or pretext. Metro had a legitimate, nondiscriminatory reason for an adverse action against

Hines. Hines's employment ended because he did not come back to work when his leave ended. Furthermore, Hines did not notify Metro of a need for additional leave or to explain why he had not returned to work. Under Metro's leave policy, Hines's failure to return to work at the end of his approved leave period constitutes a voluntary separation from employment. Hines claims that Metro did not correctly follow the policy, but there is no evidence to suggest that Metro's leave policy was interpreted differently for Hines than for non-minority employees. Thus, Hines's claim does not support an inference of pretext. See Floyd v. State of Missouri Dep't of Soc. Serv., 188 F.3d 932, 937 (8th Cir. 1999) (departure from policy affected all candidates, not only plaintiff).

Finally, there is no evidence suggesting that Krogstad's belief that Hines voluntarily terminated his position was not her actual, legitimate understanding of Hines's action. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 n.2 (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470) (8th Cir. 2000) (relevant inquiry is whether the employer believed employee guilty of conduct justifying discharge).

Based on Hines's failure to meet his prima facie burden or to establish that Metro's asserted reason was pretextual, defendant is entitled to summary judgment as a matter of law.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed with prejudice.

**LET THE JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 19, 2001

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd